The next case is 23-1731, Centripetal Networks v. Palo Alto Networks. Mr. Hanna, when you're ready. Good morning, Your Honors. May it please the Court. James Hanna on behalf of Centripetal. The Board's decision in this case should be reversed for at least two reasons. The first is that the Board failed to explicitly construe and faithfully apply the construction of a key term, which is reportability likelihood. The second is that the Board used hindsight bias to find that an undisputedly new technology was obvious in light of the prior art. So I'd like to first start with reportability likelihood and what this is and what Centripetal came up with in finding and developing this technology. In the cybersecurity field, as Your Honors I'm sure are aware, it's a very complicated task to protect the network and many of these firms have loads and loads of cybersecurity analysts that are analyzing threats as they come into a network. These threats typically will have threat scores and these threat scores will indicate the threat that a particular virus will do, the damage it will do to a network. What Centripetal noticed is that only a fraction of these threats are actually reportable. And what that means is looking at the threat as it's coming in to a network, whether a cyber analyst is going to actually report the threat. Now this is different than what a threat score is. So I'll give you an example. So say two threats come in. One threat has a score of 9 because it's going to do a lot of damage to your network. Another threat comes in that has a score of 7 because it's not going to do as much. Well a cyber analyst might report this threat score of 7 but not the threat score of 9 because the threat score of 9 might be, we might have tools that are going to be able to deal with it. It might be known. But the threat score of 7 might be brand new and they don't have tools to deal with it. So I think a proper analogy of this is COVID. If you think about it, COVID when it first came out was highly reportable. It was a threat that was highly reportable. Now COVID is not as reportable. We don't have to go to those centers anymore and report when someone is infected with COVID. The threat's the same. We just don't have, we now have the tools that are able to deal with certain aspects of COVID. And that's the same thing as applies to security. When you have the tools and when you have the necessary things to combat the viruses as they come in, it may be less reportable. And this system is exactly what Centripetal came up with. It greatly increased the workflow for these cyber analysts. Instead of being able to see all these threats and all these scores and have to make a judgment as to whether it's going to be reportable or not, Centripetal came up with a system that actually would say, okay, is this going to be reportable by a cyber security analyst? And if it is, then it's going to note that. And it uses, for example, it'll use artificial intelligence to get into the mind of what a cyber security analyst would do. Can we talk about claim construction? Because I guess all this turns on reportability likelihood. I understand that you're faulting the board for not expressly construing it. But when I look at the record, it looks as if you both proposed constructions. They didn't seem to be materially different. The board said that at institution. Nobody told them they were wrong. And in fact, your side, I think, expressly said nothing turns essentially on deciding the construction. So if I got all that right, how could it possibly be an error for the board not to have construed a claim that wasn't in dispute? Because the way that the board applied it. So we agree that the reportability likelihood has to be the probability that an event is going to be reportable. Pam agreed with that as well. But the board. I don't. Show me where the board. You say it took out the requirement of probability. I just don't see that anywhere in the board's opinion. So when they applied it to church. The board specifically said that. And this is an appendix. Where is it? The board. The board held that the reportability likelihood could be expressed in any manner. Right. But it didn't say you don't need a reportability likelihood. It didn't say you don't need probability. It just said it can be expressed in any manner. That's not the same thing as I read it as saying, hey, you don't need a reportability likelihood. You don't need a probability. Well, the normalized value is not a probability. Both sides agree. Well, that's a substantial evidence argument. I mean, I think you're doing what lots of patentees like to do here and try to get a better center of view by saying it's a claim construction. But the board said likelihood, which is the same as probability, isn't it? You just don't agree that the prior art discloses likelihood because threat, in your view, is not likelihood. Well, I think what happened was the board said, okay, we're not going to construe this term because both sides agree that it's a problem.  And the board never. The board didn't diverge from that. Right. They said likelihood. The stuff you just read us said likelihood. So that's the proper claim construction, isn't it? Probability, likelihood. I mean, they use two different words, but it's the same claim construction. Well, no, Your Honor, because when they said that it could be expressed in any manner. What did they say could be expressed in any manner? The reportability likelihood. By that reading, that's saying that doesn't have to be expressed as a probability. That whole analysis that they applied when they were talking about the normalization for church, they said that a normalization, I mean, I think we all understand. What if that phrase had said probability can be expressed in any manner? Would you have a problem with them then? That probability can be expressed in any manner? Yeah. I mean, I think it still has to be a probability, though. That's what they're saying. It's probability, but it can be expressed in any manner as long as it's expressing a probability. That, to me, is what they're saying when they're saying what you just quoted to us. And so then you have to show why the prior art doesn't disclose a likelihood or probability. So I'm unclear how you can express a probability as a normalized value. That's a substantial evidence argument, though. You should be arguing that their reliance on that reference, which only has a threat level, doesn't contain probability, and therefore that reference is not substantial evidence for their decision. And we do argue that in our papers. This is part of the hindsight bias that we argue throughout our papers. And what we say is the board absolutely applied hindsight bias because— I don't really care about the hindsight bias argument yet, though. You're trying to convert a substantial evidence argument into whether the prior art discloses a likelihood or probability into a claim construction, and I don't think there's a claim construction argument here. So explain to me why the board was wrong in pointing to this threat level as showing a probability. Okay, because the claim language itself differentiates between the two. It says that you can have a reportability likelihood that has to be generated based on an algorithm, and one of those factors can be the risk score. I think it's undisputed that the risk score is this. I mean, you're not answering the question. The question is why is the board's reliance on whatever the prior art shows as a threat level not substantial evidence to support its view that it discloses a reportability likelihood? I'm sorry, I was trying to answer that. Well, you're talking about the claim language. We've already, at least hypothetically and for purposes of argument, established that I don't think there's a claim construction problem. So pointing to the patent is not answering the question of what the prior art discloses and whether the board's reliance on it is supported by substantial evidence. Okay, so the threat level or the threat score that's equivalent in church, that is the score that the event is going to be a threat. And actually that whole quote is actually truncated from Pan when they cite it every time. But that is the probability that an event is a threat. That is not the probability that the threat is going to be actually reportable. It doesn't take that next step. And the only reason that I was pointing to the claim language, Your Honor, was to Can I point you to page 25 of the board's decision, which is also page 25 of the appendix? Yes, Your Honor. The bottom paragraph, the board says, responding to this exact argument, church expressly states that its threat rating indicates the likelihood of an event being a threat to the network and the subjective value. That's exactly my point. So the likelihood of an event being a threat to the network, not the likelihood of the event being reportable. It doesn't take that extra step. And the reason I'm pointing back to the claim language is because the claim language already accounts for the threat being a network. The claim language requires, in addition, it being reportable. So that's what Centropo came up with. It had a system that had a bunch of threats that came in with threat scores. And cyber analysts were overwhelmed. They were completely overwhelmed. Did the board find that there is at least a correlation that church discloses between the severity of the threat and the reportability of the threat? Church never talks about reportability. Did the board say that church would render that obvious to want to steal the art? Well, what the board said was that you would use it as a reportability likelihood, which assumes that you know what a reportability likelihood is. That concept did not exist in the prior art, and that's undisputed. That's your hindsight argument, but why is there not substantial evidence to support the board's reading of church as establishing or rendering obvious a correlation between the more severe a threat, the more likely it is that it should be reported? Because, and we have the example in our briefing, when you have this normalized value that is pointed to, and they say the normalized value is 30, that's the likelihood of it being a threat to the network. If there's a threshold of that threat being to the network, it might not be reported at all. So that's not a probability of it being reported. There's nothing in church that says anything about this being reportable. You answer your rebuttal, but before you go, is this reportability likelihood a term that you have in other patents you own that might come before the board in IPRs or district court, or is it only in the patents that are in this IPR, if you know? This is the only one that I can think of right now that has it in the claim language. Maybe it's in the specification, but this is what I would qualify as the cyber analysis workflow patent, and this is an improved workflow for a cyber analyst. And in terms of district court, this patent, this portion was stayed. Right, the same patent, but I was asking if there was other patents, and to your knowledge, you don't. To my knowledge, I can't think of any. I would be involved, but I can't think of any. Okay. Thank you, Your Honor. Mr. Hallward-Drymeier. Thank you, Your Honor. May it please the court. Can you jump right in on that point I was asking your friend about? We were looking at that part of the board's decision, and he made a point that what the board was pointing to was still just a threat level and didn't actually translate to reportability. So the board does expressly address that argument, and there is more to the language in church that the board is relying on because it's a likelihood of the event being a threat and the subjective value of the loss or the magnitude of the loss. If the event is not responded to, that's the reporting. And I'm quoting from page 25. This is the board citing church at 825 to 28. So it's this notion that this is the risk. If the event is not responded to is how we know that church is directing its threat level at whether the user is going to respond or not. And the board addresses this specifically on pages 26 and 27. On 27, they're responding to the patent owner's argument that church teaches away from responding. And they say, no, that's not true, church. And they cite, this is 27, about the middle of the page, they're citing including to church at 9, lines 25 to 29, that the user, which is the analyst, reviewing the threat ratings, can request that a defensive or corrective action be taken. So the ratings are used to prioritize the user's review so that they can report, i.e., take an action, which is either a report or, at the very least, obvious to report anything you've requested that an action be taken for. So church is specifically describing this likelihood in terms of whether it does or does not require action on the part of the user. So on substantial evidence review, that is certainly substantial evidence. And I agree with Your Honor, Judge Stark, that this is not a claim construction issue. And I do want to just underscore one point that I think proves that. And that is at 825, in which the board specifically notes the dictionary definition of likelihood being a probability. So they're not saying a likelihood is not a probability. They're acknowledging that those two terms are often equated. But they say that there's no requirement in the 899 that this likelihood be expressed in a particular manner. And, in fact, in the reply brief at page 13, the patent owner acknowledges, concedes, that it doesn't have to be in the form of a percentage or decimal between 0 and 1. But then when they go on to say why it is the church doesn't describe this, they keep saying it doesn't describe it in percentage terms, such as at page 22. And they say that 30 is not equivalent to 30 percent likelihood probability that it will be reported. But a probability doesn't require that kind of percentage. It can be more probable, less probable. And, in fact, both church and the 899 describe the likelihood in those same terms. Counsel referred to church saying that a user could look at threat ratings of 0 to 30 and say those are low risk, and so I'm not going to spend my valuable time on those. He says that means that's a zero likelihood of reportability. Well, that's ex post, right? There was some likelihood. It was just a low likelihood that they would be reported. In the actual event, it may be that the user says I don't have time to deal with those. But this is the exact same thing that the 899 uses to describe a reportability likelihood. 899, and this is at A66, column 350 to 53, discloses that events with a low likelihood of reportability may never be investigated by cyber analysts and may be removed from the queue. If they've been there too long, the cyber analysts are dealing with the higher ratings, the ones with a greater likelihood of reportability. And the board points this out and notes also elsewhere that the 899 describes the relationship between severity of risk and reportability likelihood. On A23, they cite the 899 at column 15, lines 1 to 9, as describing features, quote, designed to measure or quantify a human's perception of the threat risk and therefore reportability likelihood of an event. So in other words, the 899 is describing the exact same thing that Church does in light of AMSR. I don't understand. Mr. Hanna says Church uses normalized values. What does that mean to you, and why is that still a probability? Well, normalized values are 0 to 1. And obviousness does not turn on whether it's 0 to 1 or a decimal point from 0 to 1. Those can be the same thing or at the very least would be obvious from one another. It's just a question of where are you putting the decimal points. Again, what Church is disclosing is the likelihood that this is the thing that the analyst is going to focus on and report. And that is, I mean, likelihood is used by Church itself, right? And so that the product of this is a likelihood of the user taking the corrective action, which is what's called for, that's what Church is focusing on, is when we're talking about substantial evidence review, I think, amply supported. This may be the same question, but in the Gray Brief they fault you for suggesting that a reportability likelihood can be a probabilistic determination as opposed to a probability. Did you mean something different by probabilistic determination? I don't think so, Your Honor. I think, again, because the probability or likelihood doesn't have to be expressed in any particular fashion, we were just trying to cover that there can be other ways of describing it. And again, that's in the 899 as well when they talk about these low likelihood events as being ones that you might be able to set aside and the high risk ones being the ones that would therefore have a high reportability likelihood. Those are the same things that are described in Church. I think in this response to the hindsight argument, in essence what the 899 does is take what the prior art already discloses and just uses different words to describe it. Instead of describing it from what's the risk if we don't act, i.e., what's the likelihood we're going to need to act, they describe it from the end. What's the likelihood that an action was taken and a report made? But it doesn't matter how you describe it. Obviousness is based upon the reality of what's disclosed. If the panel has no further questions, thank you. Mr. Hanna, you have two minutes left for rebuttal. Thank you, Your Honor. I think something to note from counsel's arguments is that it never really addressed what Church actually says. As Your Honor pointed out on page 25 of the appendix, Church describes the likelihood of an event being a threat to the network. It never takes the extra step of saying that threat is going to be reportable by a cyberanalyst. That's the key to the invention. What about the if-not-responded-to portion? I'm sorry? What about the if-not-responded-to portion? A response implies a message being sent. But we need an algorithm that's designed by the system using, for instance in Claim 11, a machine algorithm or an AI algorithm that's actually going to generate that. That's the problem. He kept saying that it's going to be done by a person looking at that. That's the problem this system solves. By the board adopting this pseudo-construction, if you want to say, about the probability, they completely ignored the testimony of Dr. Orso. It's completely absent from this decision because they tried to say that it can be expressed in any manner. Every time that counsel talked about this, he always never addressed the fact that this is the likelihood of an event being a threat versus being reportable by the cyberanalyst. That's exactly what the invention is trying to solve here. With regard to the normalized value, a normalized value mathematically is a value that's going to be assigned across a variety of different factors that are going to happen. It's not a probability that it's going to be reportable by a cyberanalyst. That concept is completely absent from the argument. Thank you. Thank you, Your Honors.